RECEIVED IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
2004 JUN 22  A 11: 00          NORTHERN DIVISION

| | | |
|---|---|---|
| PACIFIC INSURANCE COMPANY, LTD., | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO.: 03-5-838-N |
| | * | |
| LIBERTY MUTUAL INSURANCE CO., | * | |
| NATIONAL UNION FIRE INSURANCE | * | |
| COMPANY and UNITED STATES | * | |
| FIDELITY and GUARANTY COMPANY | * | |
| | * | |
| Defendants. | * | |

## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT/ MOTION FOR AND BRIEF IN SUPPORT OF SUMMARY JUDGEMENT

COMES NOW, Liberty Mutual Insurance Company, the Defendant in the above styled

action, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves this Court

to enter Summary Judgement in the Defendant's favor dismissing the Plaintiff's Complaint

against it with prejudice on the grounds that there is no genuine issue as to any material fact

and that the Defendant is entitled to judgement as a matter of law.  In support of this

motion, Defendant states and shows unto the Court the following:

### A.  BASIS OF MOTION

This Motion for Summary Judgement is based upon the following:

1.     Plaintiff's Complaint;

2.     Defendant's Answer;

3.     Plaintiff's  Evidentiary  Submission  in  Support  of  it's Motion for

Page 1 of  20

Summary Judgment;

4.    Defendants Evidentiary Submission in Support of it's Motion for Summary Judgment.

## B.    FACTUAL AND PROCEDURAL BACKGROUND
### (Statement of Uncontested Facts)

This lawsuit arises out of Pacific Insurance Company's (hereinafter Pacific) attempts to obtain either complete indemnification or contribution from Liberty Mutual for costs and expenses incurred in the defense and settlement of a lawsuit brought by Marvin Mitchell against Gulf States Paper Corporation styled Marvin Leon Mitchell and Della Mitchell v. Gulf States Paper Corporation and David Tait, Circuit Court of Marengo County, Alabama Case Number CV-96-125.

The issue before the Court on Plaintiff's Motion for Summary Judgement and that filed by the Defendant, is the force and effect to be given to an indemnification agreement entered between Pacific's insured, Safe Seal, and Gulf State Paper Company (GSPC) as it relates to insurance coverage provided by Pacific.

In 1996, Safe Seal, a specialty contractor concentrating on in-line repair of leaks in piping and conduit in industrial settings, entered into a contract with GSPC to repair steam and chemical leaks as requested by authorized GSPC representatives (Plaintiffs Exhibit A, Attachment 2). The contract required Safe Seal to perform its services in accordance with a 1994 general price list when requested by GSPC.  Part of the contract between GSPC and Safe Seal was a requirement that Safe Seal indemnify, defend and hold harmless GSPC, it's agents, officers, and assigns of and from:

and against any and all liabilities, claims, losses, damages, penalties, cost or expenses (including but not limited to Court costs and reasonable attorneys fees) for damage to property of what so ever kind or nature or injury to persons (including but not limited to death) arising out of or in connection with the performance of the work by contractor, its agents, independent contractors, subcontractors, vendors, and each of their agents, officers or employees, whether or not it is caused in part by any indemnity. Contractor's obligations under this indemnity shall not extend to property damage or personal injury caused by the sole negligence of any indemnitee or its agents, officers, directors, employees and assigns
(Plaintiff's Exhibit A, Attachment 2, p.12).

The contract further provided that Safe Seal expressly waived any defense based upon worker's compensation immunity for those claims brought by its employees injured on the job or who made claim against GSPC for injuries sustained (Plaintiff's Exhibit A, Attachment 2, p. 12).

In addition to agreeing to indemnify, defend and hold GSPC harmless from any and all claims and liabilities, even those asserted by Safe Seal employees, the contract in Paragraph 19, further provided that GSPC be designated as an additional insured under the policy stating:

Owner shall be designated as an additional insured under all insurance policies of contractor acquired or maintained to fulfill the requirements for insurance imposed by this contract. Contractor waives any and all rights of recovery against owner for any loss or damage covered by any insurance acquired or maintained by contractor or for its benefit, including all rights that otherwise accrue to any subrogee
(Plaintiff's Exhibit A, Attachment 2, p. 12).

At the time of Marvin Mitchell's accident in 1996, Safe Seal was covered by a policy with Pacific which provided general liability coverage for those sums that the insured "becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies (Exhibit B to Plaintiff's Complaint; Plaintiff's

Exhibit A, Attachment 3, Paragraph 1(a), Commercial Liability Coverage Form). The policy

in Section I, p. 2(b), sought to limit the company's liability by excluding generally

contractual liability stating that the policy of insurance did not apply to "bodily injury" or

"property damage" for which the insured is obligated to pay damages by reason of the

assumption of liability in a contract or agreement.  The policy, however, limited that

exclusion by providing:

> This exclusion <u>does not apply</u> to liability for damages:
> 1.    assumed in a contract or agreement that is an "insured contract",
>       provided the "bodily injury" or "property damage" occurs subsequent
>       to the execution of the contract or agreement; <u>or</u>
> 2.    that the insured would have in the absence of contract or agreement.
> (Plaintiff's Exhibit A, Attachment 3, Paragraph I, 2(b)(1) and (2).

The term "insured contract" is defined in the policy in Section V, Paragraph 8(f) as

including:

> that <u>part of any other contract</u> or agreement pertaining to your business
> (including an indemnification of a municipality in connection with work
> performed for a municipality) <u>under which you assume the tort liability of</u>
> <u>another party to pay for "bodily injury" or "property damage" to a third</u>
> <u>person or organization.</u>  Tort liability means a liability that would be imposed
> by law in the absence of any contract or agreement.
> (Plaintiff's Exhibit A, Attachment 3).

In addition to extending coverage to Safe Seal (and consequently GSPC under its

indemnity agreement) for damages assumed under an insured contract, the policy, by

endorsement, also designated GSPC as an additional insured by amending the "WHO IS AN

INSURED" section to provide:

> (A) WHO IS AN INSURED (Section II) is amended to include as an insured
>
> any person, organization, trustee, estate or governmental entity to whom or

to which you are obligated by virtue of a written contract or agreement or by virtue of the issuance or existence of a permit to provide insurance as is afforded by this policy, <u>but only with respect to liability arising out of</u>:

    1.   <u>"your work" for the additional insured(s) or for which a governmental entity has issued a permit, or</u>

    2.   <u>acts or omissions of the additionally insured(s) in connection with their general supervision of "your work" at the location shown in the schedule;</u>

(Plaintiff's Exhibit A, Attachment 3).

With respect to coverage extended to additional insureds, the endorsement in Paragraph C(2) stated that the policy of insurance did not apply to :

    A.   bodily injury or property damage arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed by the additional insured(s) by you.

(Plaintiff's Exhibit A, Attachment 3).

The interplay of the indemnity agreement and of the Pacific policy became important on or after February 7, 1996, when Marvin Mitchell, a Safe Seal employee, was injured while attempting to repair a leaking boiler pipe at a GSPC facility in Marengo County, Alabama. Mr. Mitchell was burned as a result of his injuries and required extensive care and treatment thereafter. (Plaintiff's Exhibit A, Attachment 3, p. 3, 114, 115, 165). He and his wife filed suit in the Circuit of Marengo County in the latter part of 1996, that case styled <u>Marvin and Della Mitchell</u> v. <u>Gulf States Paper Corporation</u>, CV-96-125. (Plaintiff's Exhibit C). In their Complaint, the Mitchells made various allegations against GSPC and a supervisor on the job, David Tait, including, claims for negligence and wantonness for the Defendants alleged failure to provide Mr. Mitchell with a safe place to work and for failure

to warn of hidden or latent defects in its property (Plaintiff's Exhibit C).

Subsequent to the filing of the original Complaint, the Plaintiffs filed an amendment to add as Defendants Spider Staging and Oliver B. Cannon & Sons, two companies involved with equipment on the job, both of whom were later dismissed as Defendants on Summary Judgement.  (Plaintiff's Exhibit D through E).

Pursuant to the indemnification, defense and hold harmless agreement entered between Safe Seal and GSPC, GSPC tendered the defense of the Mitchell action to Pacific which assumed the defense GSPC and Mr. Tait without restriction or reservation communicated to GSPC in 1996.  Pacific did send a Reservation of Rights letter to its insured Safe Seal at or about the time it assumed the defense of GPSC under the contract provisions of the policy.  (Defendant's Exhibit 1). A copy of that letter was not delivered to GSPC until March 15, 2000.  (Defendant's Exhibit 1).  Pacific employed Birmingham attorneys Labella Alvis and Robert Cooper, formally of the Rives and Peterson firm in Birmingham, to represent GSPC and its employee .  (Plaintiff's Exhibit A, Affidavit of Cooper).  Ms. Alvis and Mr. Cooper, as counsel retained by Pacific, filed Answers on behalf of the Defendants and over the ensuing seven years defended GSPC and Mr. Tait against the allegations set forth in the Mitchell Complaint.  The Answer filed by Counsel retained by Pacific, after denying liability, pled the affirmative defense of contributory negligence asserting that Mr. Mitchell, through his own carelessness, either caused or contributed to the injuries he sustained and for which the Complaint was made .

The basis for retained counsels' averment that Mitchell and/or his employer were, if not the primary cause, a contributing cause of the injuries Mitchell sustained was evidence

adduced during Pacific's investigation and in discovery which showed that Mr. Mitchell, despite his background and training as specialty contractor, failed to wear protective clothing which would have prevented him from being severely injured by steam and/or hot water escaping from the pipe. Mr. Mitchell claimed he had never received specific training in the use of protective equipment. (Defendant's Exhibit 2, deposition excerpts of Mitchell Exhibit 2(a) &(b). Mitchell's own employer cited him for failing to follow known work practices by failing to wear protective boots. (Defendant's Exhibit 2, Deposition excerpts of Mitchell; Deposition excerpts of David Tate Exhibit 2(c).

In addition to asserting that Mr. Mitchell and/or his employer either caused or contributed to the injuries he sustained in their Answer, retained counsel filed discovery responses signed by the Defendants in which they reaffirmed their belief that Mr. Mitchell was, at least in part, responsible for his own injuries as a result of his failure to follow company safety rules. (Defendant's Exhibit 3). Pacific and its retained counsel adopted a defense plan based on Mitchell's own negligence in causing his injuries. (Defendant's Exhibit 5).

Beginning in February 2000, almost 3 ½ years after Pacific had assumed the defense of GSPC in the underlying lawsuit, Pacific first wrote Liberty Mutual Insurance Company seeking indemnification and/or contribution. (Plaintiff's Exhibit A, Attachment 4). At or about the same time, Pacific also intimated that it intended to withdraw its previously made agreement to defend and indemnify GSPC, a threat that resulted in a declaratory judgement action being filed in the Circuit Court of Marengo County (Defendant's Exhibit 4). That suit was dismissed upon assurances from Pacific that it would continue its representation of

GSPC under the policy without threatening withdrawal. (Defendant's Exhibit 4). Thereafter, Pacific sent frequent letters to Liberty Mutual seeking either full indemnification and/or contribution from Liberty Mutual. (Plaintiff's Exhibit K).

In response to Pacific's frequently repeated request that Liberty Mutual take over the defense of GSPC or contribute to the cost of a defense, Liberty Mutual responded by a letter setting out its position and asserting that the contractual liability assumed by Safe Seal under the indemnity agreement and covered by the policy required Pacific to act as the primary insurer and, as a result, denied that it had any duty to participate until the underlined primary limits were exhausted. (Defendant's Exhibit 6).

The underlying lawsuit was subsequently settled by Pacific for $562,000.00 and claim has now been made against Liberty Mutual for that amount plus $139,362.74 for what have been classified as "defense and investigation" costs. (Plaintiff's Exhibit's A & B). Liberty Mutual was not advised of the settlement until after it was completed and was not made aware of the settlement amount until after this declaratory judgment action had been filed.

Pacific, in its Complaint for declaratory relief claimed in the alternative,

2.   that it is entitled to full indemnification for the defense and indemnity cost incurred in the underlying lawsuit; or,

3.   It is entitled to 50% contribution from Liberty Mutual against those costs and expenses incurred in the underlying lawsuit.

### C.    ARGUMENT

1.    **PACIFIC IS NOT ENTITLED TO INDEMNIFICATION OR CONTRIBUTION FROM LIBERTY MUTUAL FOR ANY AND ALL INDEMNIFICATION AND DEFENSE COSTS INCURRED IN THE UNDERLYING LAWSUIT.**

Pacific seeks to take advantage of the doctrines of equitable subrogation and contribution but ignores the relationship between the parties and the provisions of its own policy in making that argument. Pacific's obligations under the policy as they relate to this dispute were twofold:

1.    Pacific was obligated under the assumed contractual liability provisions of its policy (liability assumed by contract) to indemnify Safe Seal against all damages rising out of the indemnity agreement entered with GSPC; and

2.    In addition to protecting it's insured, Safe Seal under the assumed liability provisions of the policy, Pacific was required, in the event it became necessary, to treat GSPC as an additional insured under the policy in accordance with the terms and conditions of the additional insured endorsement.

The obligations under the contract provision, specifically Pacific's obligation to Safe Seal to indemnify it from any and all damages or losses assumed by contract, were separate and distinct from the additional insured protections applicable to GSPC or the "other insurance" provisions or the policy.    Pacific seeks to blend the two together and to ignore its primary obligation under the facts and circumstances presented in this case:    the protection of its insured, Safe Seal, from liability its assumed under an insured contract and which Pacific covered under its policy.    The sums paid in defense and settlement of the Mitchell case were paid, not because GSPC was an additional insured, but because Pacific's insured, Safe Seal, had assumed the obligation to make those payments.

Page 9 of 20

Under Pacific's policy it agreed to pay those sums which Safe Seal became legally obligated to pay because of bodily injury or property damage to which the policy applied. That included liability for damages assumed by contract or agreement that was an insured contract under the policy, provided the injury or damage occurred subsequent to the execution of the contract. The extension of coverage to Safe Seal is a blanket extension covering all liability it assumed by contract or agreement, provided there were an insured contract as defined by the policy. If the indemnity agreement by which Safe Seal assumed the liability of GSPC was an insured agreement under the policy and, if the allegations in the Complaint fell within the terms of the indemnity agreement, Pacific was and is bound to its insured, Safe Seal, not GSPC, to provide full coverage for and pay all amounts due for liabilities assumed under their contract. Its duty is primary and must be. To deem it otherwise would render both the indemnity provisions and the liability assumed under insured contract provision of the policy meaningless.

The definition of insured contract in the Pacific policy included that part of any contract in which the insured, Safe Seal, assumed the tort liability of another third party (GSPC) to pay for injury or damage to a third person or organization (Marvin Mitchell). A clear reading of the definition of insured contract compels the conclusion that the indemnity agreement entered into between Safe Seal and GSPC constituted an insured contract under the policy and, as a result, if the underlying incident fell within the terms and conditions of the indemnity agreement, Section I of the Commercial Liability Coverage Form, provided full and unrestricted coverage for the liability assumed by Safe Seal under its agreement.

The indemnification agreement between Safe Seal and GSPC provided blanket

indemnification for all liabilities, costs or expenses of any kind arising out of or in connection with the performance of the work by Safe Seal its agents, contractors, employees and others. The only limitation on the scope to indemnification was the exclusion of damages or injuries caused by the <u>sole</u> negligence of any indemnity (GSPC) or its agents, employees and assigns.

Here the evidence is overwhelming that the injury sustained by Marvin Mitchell was caused either in whole or in part by his own negligence or that of his employer. Mr. Mitchell's negligence, or that of his employer, was recognized early on by Pacific and its retained counsel as being, if not the cause of Mr. Mitchell's injuries, a contributing factor. In its Motion for Summary Judgment, Pacific conveniently ignores Mr. Mitchell's owns culpability, or that of his employer, by arguing that the issue of "sole negligence" is resolved by the entry of Summary Judgment in favor of Spider Staging and Cannon Sline. Pacific that its own plan of defense as reflected in filings in the underlying lawsuit by its retained counsel and related correspondence was to rely heavily upon the doctrine of contributory negligence as it relates to Mr. Mitchell's own carelessness or that the injuries were the result of his employer's failure to properly train and instruct him in safe work practices as being a contributing if not a primary cause of Mr. Mitchell's injuries. Defendant's Exhibits 3 & 5 contains but a sampling of Pacific's recognition that Mitchell was complicit in causing his own injuries. As early as November 14, 1996, retained counsel filed discovery responses stating:

> 3.    Subject to further discovery, the Plaintiff was contributorily negligent in that he did not wear or otherwise use proper safety equipment and apparel, including, but not limited to, proper rubber boots or other

> protective shoes, proper protective pants to  protect his lower
> extremities, proper protective coat or at least improper use of a
> protective coat.
>
> Plaintiff is a lead technician for Safe Seal and had performed this type
> of work in the past and is familiar with proper safety measures and
> apparel.  Plaintiff also visited the site of the repair the day before the
> accident and inspected the area and conditions.  It was then up to him
> to determine and implement measures and means by which to protect
> himself from injury.
>
> Plaintiff chose the method to repair the leak and was in the best
> position to know the potential hazards.
>
> Plaintiff also improperly or negligently used the "bucket" to lower
> himself to the work area and in so doing cause, aggravated or increased
> the injuries.  Plaintiff did not properly work or otherwise use the
> "bucket" in order to raise it and himself out of the area in which his
> burns were cause. As discovery is in its early stages, defendant reserves
> the right to supplement this answer.
> (Defendant's Exhibit 3).

At the same time, Retained Counsel, Labella Alvis was advised by Crawford and

Company:

> We would like to advise we have also checked with Safe Seal and
> requested information they may have with regard to their own
> investigation in this matter based upon our discussion with Roger
> Hodge who was supervisor of the injured employee. We would like to
> advise that we have spoken recently with Mr. Roger Hodge of the Safe
> Seal company. We did not get a chance to speak with him thoroughly
> due to the fact that he contacted us from a work site. He did advise
> however that based upon his investigation that he did in fact go to Gulf
> States Paper Corporation later that morning after the accident occurred
> and this accident and/or injury was a result of Mr. Mitchell not
> wearing the proper safety clothing for the job. Mr. Hodge also advised
> that there is a sheet titled "Job Safety Analysis" which should be filled
> out completely by the Lead Technician and sent to the company to
> evaluate before a job is performed which was not done in this case.
> Mr. Hodge also advised us that he wrote up safety violation on Marvin
> Leon Mitchell with regard to his handling of these repairs.
> (Defendant's Exhibit 5).

Contributory negligence remained the essence of Pacific's plan of defense until the day the case settled. In his preliminary evaluation, Retained Counsel Robert Cooper wrote Pacific's Robert O'Connell on September 14, 1999, states:

> In follow up to our discussion of this morning concerning my report of September 1, I would like to elaborate on a couple of items. The evaluation that I offered of $750,000.00 is my best estimate at this time of the verdict potential if a jury resolves liability against one or more of the Defendants and assigns little, if any negligence to the Plaintiff. In Alabama, as a legal matter, contributory negligence is a complete defense to a claim of negligence. Contributory negligence is not a defense to a claim of wantonness. There are very few cases in which the trial court has made a finding of contributory negligence as a matter of law in advance of a trial. In this case, however, we have some good concessions from the Plaintiff himself which will warrant a motion for summary judgement at the appropriate time.
>
> In practice, it is my experience that the charge which is given to the jury works to create a "de facto" comparative negligence standard. While I have no empirical evidence to support this position, the verdict potential of many cases seems to be ameliorated by the conduct of the Plaintiff.
> (Defendant's Exhibit 5).

Mr. Cooper followed up that letter with an evaluation letter dated November 23, 1999 in which he advised Mr. O'Donnell:

> The basis for our defense of Gulf State paper Corporation and David Tate is that the leak in the drain line from the deaerator tank called for specialized knowledge and expertise in order to effect the repair. Gulf States Paper Corporation did not want to shut down the mill in order for the repair to be made and therefore, call in Safe Seal, who holds itself out as having expertise in making these types of repairs. Gulf States Paper Corporation did not control nor did it reserve the right to control the manner or method of work to be performed by Safe Seal and Mr. Mitchell. Gulf States Paper Corporation provided access to the area of the repair on a reasonable basis and did not do anything which caused or contributed to the injury of Mr. Mitchell. <u>We can make a strong argument of contributory negligence.</u> Under Alabama law,

negligence on the part of the plaintiff which proximately contributes to his injuries operates as a bar to any recovery. The practical effect, however, of the instruction which the jury gets on contributory negligence is that it operates to ameliorate the damages which a jury would otherwise award. Stated differently, in my experience, if the jury should find negligence on the part of Gulf States or its employees, and that that negligence proximately caused or contributed to cause the injuries to the Plaintiff, I doubt that a Marengo County jury would return a verdict in favor of Gulf States abased upon contributory negligence alone. In essence, experience indicates that what results from a charge of contributory negligence is a defacto comparative negligence analysis.
(Defendant's Exhibit 5)

The evidence is undisputed that both Pacific and GSPC, along with retained counsel, believed that the accident resulted from Mitchell's own negligence or that of his employer as a result of Mitchell's failure to comply with known work rules and to wear the appropriate safety clothing to prevent or minimize the extent of his injuries. The fact that one or both of those entities were immune from suit is immaterial in determining the scope of the exclusion contained in the indemnification provisions of the contract.

If, as contended here, the indemnity agreement applies to the underlying Mitchell claim against GSPC, it falls squarely within the definition of an insured contract under Pacific's policy and, as a result, Pacific has an unrestricted obligation to indemnify and defend its insured, Safe Seal, for damages assumed under that contract, and That obligation is separate and distinct from its obligations to GSPC as an additional insured under the contract. Because Pacific provided Primary coverage to Safe Seal for the defense and indemnification of GSPC, Pacific is not entitled to indemnity or contribution from this Defendant.

2.    <u>OTHER INSURANCE PROVISIONS OF THE PACIFIC POLICY</u>

Plaintiffs contend, in the alternative, that the other insurance provisions of the Pacific policy requires Liberty Mutual to contribute 50% toward the settlement and defense costs. The obligations Pacific assumed under its contract of insurance with Safe Seal required that it pay those sums Safe Seal became legally obligated to pay as a result of liabilities assumed under an insured contract. Liberty Mutual believes that the contractual obligation assumed by Safe Seal and covered under the policy by Pacific (arising out of the indemnification agreement) is dispositive of the parties responsibilities in this matter. Clearly, both Safe Seal and GSPC, along with Pacific's own policy of insurance, contemplated that Pacific would have the primary responsibility for the defense and indemnification of GSPC, not because GSPC was an additional insured on the policy, but because Pacific's insured, Safe Seal, assumed the obligation to defend and indemnify GSPC. Pacific had a duty to Safe Seal to pay those amounts it was legally obligated to pay as a result of that indemnification contract. GSPC, as the indemnitee, received the benefits under that policy, but the coverage was extended by the contract and under the insurance policy to Safe Seal. As a result, the co-insurance provisions of the policy have no application to the contractual obligations assumed by Pacific under its policy. There is no evidence that Safe Seal had additional insurance which would cover the loss in question with Liberty Mutual. Instead, the evidence shows that GSPC had a policy of insurance with Liberty Mutual that, in the absence of the indemnification agreement, a liability accepted Pacific under its policy, would have provided coverage to GSPC. The outcome of this case and the position of the parties would have been different if GSPC was simply an additional insured under the Pacific policy

and there was no indemnification provision binding Pacific to Safe Seal for the obligations it assumed under contract and which were covered by Pacific's Policy. In that situation, Alabama Law appears to be fairly clear that Pacific and Liberty Mutual would share equally in the cost and expenses of defense and indemnification. That, however, is simply not the case here.

While Defendant believes that Pacific's obligation to indemnify Safe Seal for damages assumed by contract is dispositive of this issue and requires Pacific to bear the primary burden of defending and indemnifying GSPC up to the limits of its policy, if the Court finds that the indemnification agreement and the policy provision dealing with assumed contractual liability did not vest in Pacific the primary obligation to defend and indemnify, making Liberty Mutual in essence an excess carrier, then Defendant agrees with Plaintiff, that the parties would be required to share on a pro-rata basis the defense and indemnification costs incurred in the underlying lawsuit.

### 3.    ADDITIONAL INSURED ENDORSEMENT

In its brief, Plaintiff makes several unsupported arguments that the Pacific did not owe any duty to cover the Mitchell claims against GSPC, despite having defended the company under its policy for seven years. The Plaintiff, in a conclusionary fashion, states that Pacific's duty to defend GSPC, if owed at all, was secondary to the duty owed by Liberty Mutual. Again, Plaintiff ignores the clear language of the policy dealing with contractually assumed obligations, focusing only on the Plaintiff's reading of the additional insurance endorsement in the policy which states that Pacific was required to provide insurance only for acts or omissions committed in connection with GSPC's general

supervision of Safe Seal's work.    That section, dealing with the "Who as an insured" provision of the policy, states that Section II is amended to name as an additional insured:

> any person, organization, trustee, estate or governmental entity to whom or to which you are obligated, by virtue of written contract or agreement or by virtue of the issuance of or existence of a permit to provide insurance such as afforded by this policy, but only with respect to liability arising out of:
>
> 1.   "your (Safe Seal's) work" for the additionally insured(s) or for which a governmental entity is issued a permit; or
> 2.   Acts or omissions of the additional insured(s) in connection with their general supervision of your work at the location shown in the schedule.

"Your work" is defined in the policy as being work or operations performed by Safe Seal or on its behalf; or materials, parts or equipment furnished in connection with such work or operations.  In further includes providing of or failing to provide warnings or instructions.

Generally, that provision adopts an expansive definition of an additional insured by including therein any liability arising out of the work of the subcontractor, in this case, Safe Seal. The attempt to exclude coverage in the endorsement by excluding injury or damage arising out of any act or omission of the additional insureds or any of their employees other than general supervision of work performed by the additional insured by you does not restrict subparagraph (1) of the definition of an additional insured and does not limit coverage for liability arising out of work performed by the insured. Even if it does, it would appear the issue of what constitutes "general supervision", a term undefined in the policy, and whether GSPC's action rose to the level of general supervision is a question of fact.

D.    POLICY AMBIGUITY

The additional insured endorsement, if read as Pacific suggests is also in direct conflict with the coverage afforded GSPC through Safe Seal under the contractually assumed liability exception. If read as Plaintiffs suggest, what is extended in one section of the policy is taken away in the second. Clearly, Pacific did not intend to draft an agreement that conflicts itself. The only reasonable reading of these two provisions is that the contractual liability provisions are separate and distinct from coverage afforded an additional insured.

E.    WAIVER AND ESTOPPEL

Pacific's right to enforce its claims against Liberty Mutual are derived from its designation of GSPC as an additional insured. As stated above, Pacific never sent a Reservation of Rights Letter to GSPC. The only document reflecting a reservation of rights as to its defense of GSPC was Pacific's September 19, 1996 letter to its insured, Safe Seal. (Defendant's Exhibit 1). In that letter Pacific did not reserve any right to deny coverage to GSPC based on the exclusion set forth in Paragraph C(2)(c) of the additional insured endorsement. (Excluding damages for injury arising out of the work of the additional insured GSPC, other than "the general supervision of work preformed for the additional insured(s) by you"). Nor did Pacific reserve the right to assert that the injuries sustained by Mitchell would not be covered if resulting from the sole negligence of GSPC. Finally, Pacific never delivered a copy of the policy to GSPC.

Pacific attempts to excuse itself from additional coverage for GSPC by relying on an exclusion it failed to raise in its initial reservation of rights letter. The exclusion precludes

Page 18 of 20

coverage for "Bodily injury" arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed for the additional insured by Safe Seal. As such, Pacific has waived or is estopped from asserting such a defense.

Even if the exclusion potentially applied, Mitchell alleged that GSPC was negligent in failing to properly control the manner in which the contractor, Safe Seal, performed work at Gulf States' premises. Those allegations constitute "bodily injury" arising out of an act or omission Gulf States (additionally insured) or its employees in the general supervision of the work performed for Gulf States by Safe Seal.

Defendant agrees that the doctrine of waiver and estoppel can not be used to enlarge coverage, but as is reflected in Allen's <u>Alabama Liability Insurance Handbook</u>, waiver and estoppel can preclude an insurer from asserting non coverage for acts or omissions which were not reserved when the insurer assumed the defense of its insured. Allen writes:

> As indicated earlier, waiver and estoppel are not the same. Under the doctrine of waiver, an insurer, by its acts, waives conditions to coverage; <u>under the doctrine of estoppel, the insurer is estopped from denying that the policy provides coverage even where coverage is clearly excluded.</u>
> <u>The Alabama Supreme Court, while recognizing that coverage may not be extended by waiver or estoppel, has clearly recognized that an insurer may waive the right to assert a policy suspension or forfeiture provision or be estopped from relying on such provisions.</u>
> (Allen, <u>Alabama Handbook of Liability Insurance</u>, Section 4-7 (d).

Here Pacific assumed the defense of GSPC without reservation as to "sole negligence" or for the acts or omissions other than general supervision of Safe Seals' work and, as such, is estopped from asserting non coverage at this late date.

Page 19 of 20

DENNIS McKENNNA  (MKED3744)
Attorney for Defendant
Liberty Mutual Insurance Company

OF COUNSEL:
PRINCE, McKEAN, McKENNA & BROUGHTON, L.L.C.
Post Office 2866
Mobile, Alabama 36652
(251)433-5441

## CERTIFICATE OF SERVICE

I hereby certify that I have on this **21st** day of June, 2004 served a true and correct copy of the foregoing instrument on the below listed counsel of record by mailing the same United States mail, properly addressed and first class postage prepaid, to-writ:

Melton Espy & William, P.C.
Post Office Drawer 5130
Montgomery, AL 36103-5130

DENNIS McKENNA

EXHIBITS

TO THIS DOCUMENT

ARE NOT SCANNED.

THEY ARE FILED

IN CONVENTIONAL FORMAT

AND AVAILABLE FOR VIEWING

IN THE CLERK'S OFFICE.